# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| CHARLES MCKINLEY RUSSELL, Jr.<br>#01530-016 | * | |
| | * | |
| Plaintiff | * | |
| v | * | Civil Action Case No. DKC-09-3007 |
| J.D. WHITEHEAD, Warden | * | |
| Defendant | * | |
| | *** | |

## MEMORANDUM OPINION

Charles McKinley Russell, Jr., an inmate at the Federal Correctional Institution-Cumberland, brings this action pro se challenging the implementation of the Bureau of Prisons' ("BOP")Trust Fund Limited Inmate Communication System ("TRULINCS"). Counsel for Defendant J.D. Whitehead[1] has filed a Motion to Dismiss, or in the Alternative, for Summary Judgment. Russell has filed a response in opposition. The issues are fully briefed and the court now rules pursuant to Local Rule 105.6, no hearing being deemed necessary. For the reasons that follow, Defendant's Motion for Summary Judgment will be granted.[2]

---

[1] J.D. Whitehead no longer serves as Warden at FCI- Cumberland. The Acting Warden is Joe Coakley. *See* Fed R. Civ. P. 25(d) (1).

[2] On May 21, 2010, more than two months after the filing of Defendant's dispositive motion, Russell moved to voluntarily dismiss this action without prejudice. Russell argues that he wants to prepare a new complaint more carefully, remedy "curable defects" and add claims of inadequate medical treatment which have yet to be administratively exhausted. Counsel for Defendant has filed a motion in opposition to voluntary dismissal, asserting *inter alia* that significant effort has already been expended to prepare the dispositive motion. Russell does not specify what "curable defects" he seeks to remedy. Further, his unexhausted medical claims do not appear to have any relevance to the matters at issue in this case. Accordingly, the court will deny the motion for voluntary dismissal by separate order. On May 20, 2010, Russell filed a motion to stay proceedings for an indefinite period of time to file an opposition. The motion to stay was rendered moot one week later when Russell filed a response to Defendant's dispositive motion.

I.  BACKGROUND

The following facts are either undisputed or viewed in the light most favorable to Russell, the non-moving party. Since February of 2009, the Bureau of Prisons ("BOP") through Program Statement 5265.13 has required inmates to place a mailing label generated by the computerized TRULINCS system on all outgoing mail. Outgoing general correspondence is not processed for mailing unless the name and address of the intended recipient is entered into the TRULINCS database and a TRULINCS-generated label is affixed to the envelope.

TRULINCS is primarily a system through which inmates send electronic messages to persons in the outside community. Exhibit 2, Attachment A, Program Statement 5265.13. The system requires inmates to place TRULINCS-generated mailing labels on outgoing postal (non-electronic) mail. *Id*. p. 5. The purpose of TRULINCS is to: 1) provide inmates with an alternative means of written communication with the public; 2) provide the BOP with a more efficient, cost-effective, and secure method of managing and monitoring inmate communication services; and 3) reduce opportunities for illegal drugs or contraband to enter BOP facilities through inmate mail. *Id*, p. 1.

On May 29, 2009, FCI Cumberland issued Institutional Supplement CUM 5265.13, Trust Fund Limited Inmate Communication System (TRULINCS) which established guidelines for access to the system. Exhibit 2, Attachment B. At FCI- Cumberland, each inmate has a TRULINCS account with a password and access number. Inmates may access TRULINCS terminals in their housing units and the prison Education Department. The labels are generated without cost to the inmate. Inmates may print ten labels per day and up to ninety labels per month. An inmate may maintain 100 addresses in his TRULINCS database at any time. If an

inmate wants to mail a letter to a member of the public who is not on the address list and already has 100 addresses in the database, the inmate can delete a current address and substitute the new one. The Warden or a designee may approve the printing of more than 10 labels per day. Mail lacking a TRULINCS label is returned to the inmate in the same way outgoing mail is returned for failure to comply with other processing requirements such as lack of a return address. Exhibit 2, Declaration of David Coughlin, Trust Fund Manager, FCI- Cumberland *see also* 28 C.F.R. Chapter. V, Subchapter C, Part 540.12(d) Subpart B (inmate is responsible for filling out the return address completely).

Russell contends that since April 20, 2009, he has been unable to mail general correspondence because he refuses to comply with the TRULINCS mailing label rule. Complaint, p 10, ¶ 10. On September 25, 2009, Russell posted a letter for mailing without the required label. The letter was returned to him and a disciplinary action for "unauthorized use of the mail" was brought, resulting in his loss of commissary privileges. *Id*., ¶ 12. On October 6, 2009, Russell's letter to the Honorable Eleanor Holmes Norton was returned with a handwritten note which stated: "Must contain proper label!" *Id*., ¶ 13. Russell also received an incident report for failing to use TRULINCS mailing labels, but the incident was "later expunged and the matter was informally resolved." Exhibit 1, ¶ 5, Declaration of Scott K. Golub, Unit Manager.

## II. PLAINTIFF'S CLAIMS

Russell claims that the TRULINCS mailing label policy: 1) conflicts with previous mailing rules; 2) was implemented in contravention of the "notice and comment" requirements of the Administrative Procedures Act ("APA"); and 3) violates his constitutional rights to free speech, due process, and equal protection. Complaint, ¶ 7. As relief, Russell asks the court to:

3

1) invalidate the TRULINCS mailing label requirement; 2) permit him to mail correspondence without "any restrictions beyond those provided in … 28 C.F.R. §§ 540.02-540.25"; 3) expunge his "TRULINCS related disciplinary proceedings"; and 4) grant any other relief deemed just and proper. Complaint.

### III. STANDARD OF REVIEW

Fed.R.Civ.P. 56(c) provides that summary judgment:

> should be rendered if the pleadings, the discovery and disclosure materials on file, and any affidavits, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.

The Supreme Court has clarified that this does not mean that any factual dispute will defeat the motion:

> By its very terms, this standard provides that the mere existence *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact.

*Anderson v. Liberty Lobby, Inc*., 477 U.S. 242, 247-48 (1986) (emphasis in original).

"The party opposing a properly supported motion for summary judgment 'may not rest upon the mere allegations or denials of [his] pleadings,' but rather must 'set forth specific facts showing that there is a genuine issue for trial.'" *Bouchat v. Baltimore Ravens Football Club, Inc*., 346 F.3d 514, 525 (4th Cir.2003) (alteration in original) (quoting Fed.R.Civ.P. 56(e)). The court should "view the evidence in the light most favorable to....the nonmovant, and draw all inferences in [the nonmovant's] favor without weighing the evidence or assessing the witness' credibility." *Dennis v. Columbia Colleton Medical Center., Inc*., 290 F.3d 639, 644-45 (4th Cir. 2002). The court must, however, also abide by the "affirmative

obligation of the trial judge to prevent factually unsupported claims and defenses from proceeding to trial." *Bouchat*, 346 F.3d at 526 (internal quotation marks omitted) (quoting *Drewitt v. Pratt*, 999 F.2d 774, 778-79 (4th Cir. 1993), and citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 323-24 (1986)).

IV. **ANALYSIS**

A. **Claim that TRULINCS Violates the APA**

Russell asks the court to invalidate mandatory use of TRULINCS computer- generated mailing labels on out-going mail, claiming that BOP Program Statement 5265.13 violates the "notice and comment" procedures of the APA, 5 U.S.C. § 553. The statute provides generally that an agency must publish notice of a proposed rulemaking in the Federal Register and give "interested persons an opportunity to participate ... through submission of written data, views, or arguments." §§ 553(b), (c). The rule must be published not less than 30 days before its effective date and incorporate within it "a concise general statement" of the rule's "basis and purpose." §§ 553(c), (d). Notice and comment requirements apply only to "legislative" or "substantive" rules, not "interpretive rules" or policy statements. *See Lincoln v. Vigil*, 508 U.S. 182, 196 (1993). An interpretative rule is "issued by an agency to advise the public of the agency's construction of the statutes and rules which it administers*." Chrysler Corporation. v. Brown*, 441 U.S. 281 (1979). A substantive rule seeks to "create new law, rights or duties in what amounts to a legislative act." *White v. Shalala*, 7 F.3d 296, 303 (2d Cir. 1993). As a threshold matter, the court must determine first whether Program Statement 5265.13 is subject to APA notice and comment requirements.

Pursuant to its authority under 18 U.S.C. § 4042 to manage and regulate federal correctional facilities, the BOP promulgates rules to implement its statutory responsibilities. *See* 28 C.F.R. Ch. V. Subchapter C. These rules address *inter alia* inmate contact with persons outside the prison. *See* 28 C.F.R. Pt. 540. Inmate correspondence rules are codified at 28 C.F.R. Part 540, Subpart B. In contrast, BOP program statements are internal agency explanations or guidelines. *See Reno v. Koray,* 515 U.S. 50, 61 (1995) (noting BOP Program Statements are not "laws" within the meaning of the statute because they do not constitute regulations promulgated in compliance with the requirements of the Administrative Procedure Act; rather, they are internal agency guidelines that are "akin to ... interpretive rules"; *see also Pelissaro v. Thompson*, 170 F.3d 442, 447 (4th Cir. 1999) ("A policy statement, however, is not a substantive rule but rather an interpretive statement of position circulated with in an agency that serves to provide administrative guidance in applying a then existing published rule. Accordingly, it is not subject to rulemaking requirements.").

Program Statement 5265.13 revises the method for addressing outgoing correspondence within the framework of already existing rules for inmate mail. It is an internal agency statement of explanation consistent with the regulation it clarifies. No new rights or duties are created. Program Statement 5265.13 is not the type of agency decision that requires notice and comment.

### B. Claim that Mailing Label Requirements Violate Constitution

Russell next claims that mandating use of computer-generated mailing labels violates his constitutional rights to equal protection, due process and free speech.

#### 1. Equal Protection

To prove an equal protection claim, a litigant " 'must first demonstrate that he has been

treated differently from others with whom he is similarly situated and that the unequal treatment was the result of intentional or purposeful discrimination .'" *Veney v. Wyche*, 293 F.3d 726, 730 (4th Cir. 2002) (quoting *Morrison v. Garraghty*, 239 F.3d 648, 654 (4th Cir. 2001)). Russell neither alleges that he is being treated differently than other similarly situated inmates nor that the use of TRULINCS mailing labels is based on a particular status or protected category. In fact, the practice is universally applied to inmates throughout the facility. Exhibit 2, Attachments A and B.

### 2. Due Process

Russell next alleges that the mailing label policy violates his Fifth Amendment right to due process, but provides no factual predicate for his otherwise conclusory assertion. A liberty interest protected by the Due Process Clause may arise from either the Due Process Clause itself or enacted law. *See Hewitt v. Helms*, 459 U.S. 460, 466 (1983). "As long as the conditions or degree of confinement to which the prisoner is subjected is within the sentence imposed upon him and is not otherwise violative of the Constitution, the Due Process Clause does not in itself subject an inmate's treatment by prison authorities to judicial oversight." *Montanye v. Haymes*, 427 U.S. 236, 242 (1976). Governments may confer on prisoners liberty interests that are protected by the Due Process Clause, "[b]ut these interests will be generally limited to freedom from restraint which, while not exceeding the sentence in such an unexpected manner as to give rise to protection by the Due Process Clause of its own force, nonetheless imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." *Sandin v. Conner,* 515 U.S. 472 484 (1995). For example, changes "in a prisoner's location, variations of daily routine, changes in conditions of confinement (including administrative segregation), and

the denial of privileges [are] matters which every prisoner can anticipate are contemplated by his original sentence to prison- are necessarily functions of prison management that must be left to the broad discretion of prison administrators to enable them to manage the prisons safely and efficiently." *Gaston v. Taylor,* 946 F.2d 340, 343 (4th Cir. 1991) (citing *Kentucky Dep't of Corrections v. Thompson*, 490 U.S. 454 (1989); *Hewitt*, 459 U.S. at 467; *Meachum v. Fano*, 427 U.S. 215, (1976)). Following this reasoning, adjusting the manner by which mail is addressed does not appear to be an "atypical and significant" hardship that gives rise to a liberty interest and implicates due process.

### 3. Freedom of Speech

Inmates have a First Amendment right to send and receive mail and to associate with others. *See Procunier v. Martinez*, 416 U.S. 396, 408-409 (1974). A prisoner's exercise of his constitutional rights is limited, however, "both from the fact of incarceration and from valid penological objectives-including deterrence of crime, rehabilitation of prisoners, and institutional security." *Pell v. Procunier*, 417 U.S. 817, 822-23 (1974). "When a prison regulation impinges on inmates' constitutional rights, the regulation is valid if it is reasonably related to legitimate penological interests." *Turner v. Safley*, 482 U.S. 78, 89 (1987).

In *Turner,* the Supreme Court outlined four factors to determine the reasonableness of a challenged prison regulation. "First, there must be a valid, rational connection between the prison regulation and the legitimate governmental interest put forward to justify it." 482 U.S. at 89. If not, the regulation is unconstitutional, and the other factors do not matter. *Id*. at 89-90. The other factors are considerations that must be balanced together: (1) whether there are alternative means of exercising the right that remain open to prison inmates; (2) the impact that

accommodation of the asserted constitutional right will have on guards and other inmates, and on the allocation of prison resources generally; and (3) whether there are "ready alternatives" available "that fully accommodate the prisoner's rights at de minimis cost to valid penological interests." *Id.* at 90-91.

In sum, there must be a valid, rational relation between the regulation and a legitimate governmental interest. TRULINCS pertains to how mail is addressed; it does not regulate content of the correspondence or restrict to whom mail may be sent. Inmates may request additional labels if needed. Inmates unable to use TRULINCS due to disability or other circumstance may request alternative accommodation. Exhibit 2, Attachment B, p. 5. Most importantly, Russell does not allege that he is unable to access the courts nor indicate how his freedom of expression has been hampered.

The Fourth Circuit has held constitutional a BOP policy that required a legal sender be specifically identified on the envelope and confidential mail be marked as such, finding the policy reasonably related to legitimate penological interests, and not violative of the inmate's constitutional right of access to the courts or his freedom of expression. *See United States v. Stotts*, 925 F.2d 83, 85 (4th Cir. 1991). In *Stotts*, the Fourth Circuit applied the test formulated in *Turner v. Safley*, 482 U.S. at 85, to balance protecting the constitutional rights of inmates and the need for regulations reasonably related to "legitimate penological interests." *Id.* at 89; *see also Jones v. Daniels*, 2010 WL 2228355, *7 (E.D. Ky. June 2, 2010) (finding a rational relationship between legitimate government interests and compliance with TRULINCS); *Dunlea v. Federal Bureau of Prisons*, 2010 WL 1727838 (D. Conn. April 26, 2010). Increasing and improving inmate mail services, promoting that security by reducing methods for introducing contraband,

and permitting inmates access to e-mail communication with authorized private citizens constitute legitimate interests. *See supra*, p. 2. Against this background, Defendant has articulated how TRULINCS serves legitimate penological interests: it provides cost-effective and secure monitoring and management of inmate communication.

## V.     CONCLUSION

For the foregoing reasons, Defendant's Motion for Summary Judgment will be granted. A separate Order will follow.


Date:  June 9, 2010                                    _____/s/_____
                                                                       DEBORAH K. CHASANOW
                                                                       United States District Judge